962 F.2d 10
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Larry GILLARD, Petitioner-Appellant,
v.
Richard B. GRAMLEY, Warden and Neil F. Hartigan,
Respondents-Appellees.
 No. 91-2437.
 United States Court of Appeals, Seventh Circuit.
 Argued April 22, 1992.
Decided May 19, 1992.
 
 Before BAUER, Chief Judge, and MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Larry Gillard petitioned for a writ of habeas corpus, 28 U.S.C. § 2254, claiming that an Illinois trial court improperly admitted damaging evidence. The district court dismissed his petition. For the following reasons, we affirm.
 
 I.
 
 2
 In January of 1984, Gillard was tried for rape, armed robbery, and unlawful restraint. The Illinois Appellate Court gave the following summary of the testimony produced at trial:[1]
 
 
 3
 The victim, a 25-year-old woman, testified at trial that on May 19, 1981, at approximately 10:30 p.m. she was returning to her apartment and while opening the door was attacked by a man she identified as the defendant.
 
 
 4
 Defendant grabbed her by the neck, held a knife to her throat and told her to take out her money and remove the four rings she was wearing. She stated that the area was well lighted at the time and that she was facing defendant as she handed him the jewelry and $3 from her purse. The victim further testified that defendant ordered her to open her vestibule door and walk up to the first landing, holding a knife to her throat as she did so. The victim screamed and the defendant cut her beneath the eye. Defendant tied the victim's hands, gagged her mouth and proceeded to rape her while holding her at knifepoint. He then fled.
 
 
 5
 Chicago police Sergeant Patrick Heenan, who resides approximately four blocks from the victim's apartment, testified over the objection of defense counsel that about one week after the above described incident at about 1:20 a.m. he heard a woman scream and cry for help. The scream came from the house next to his which was owned by Chicago police Sergeant Roth. Officer Heenan looked out his window and saw a man, who he identified as defendant, leave the side door of the Roth home carrying a metal ski pole. Officer Heenan testified that he ran to his back window and watched defendant walk westbound through the alley until he was out of sight. Officer Heenan then noticed Officer Roth was outside and went to talk with him. Once outside, Officer Heenan stated he saw defendant leave a gangway two houses away, still carrying the ski pole. Officer Heenan testified he ran up to defendant, announced he was an officer, and noticed that the defendant's belt was open and folded underneath and that his pants were unzipped and he was exposed. Officer Heenan stated that defendant swung his ski pole at him, knocking him down and injuring his foot, hand and back. Officer Heenan got up and assisted Officer Roth in arresting defendant.
 
 
 6
 Christine Kokocinski, a Chicago police department microanalyst, testified that she analyzed stains from the victim's coat and determined that they were seminal fluid. She also analyzed blood and saliva samples from defendant. Kokocinski stated she performed a test, referred to as the ABO test which is premised on the fact that 80% of the population are "secreters," i.e., certain chemical properties found in a person's blood are also found in his saliva and other bodily fluids, including seminal fluid. The remaining 20% of the population are non-secreters. Kokocinski determined from the ABO test that defendant was a non-secreter. A similar test performed on the semen stains from the victim's coat showed that the person who committed the rape was also a non-secreter. Therefore, according to both the ABO test results, both the defendant and the person who committed the rape fell within the same 20% of the population known as non-secreters.
 
 
 7
 Kokocinski further testified that to confirm the ABO test results, she conducted another test known as the Lewis test. This test involved a comparison between the chemical properties of the defendant's blood and the semen found on the victim's coat. From this test she concluded that certain chemical properties were found in both the blood and the semen. She testified that the results of the Lewis test, when combined with the fact that defendant was a non-secreter, would occur in only 4.4% of the black population. She stated that she made no memorandum or report regarding the Lewis test because it merely was confirmatory to the ABO test.
 
 
 8
 After considering the trial testimony, the jury convicted Gillard of rape and armed robbery.
 
 
 9
 Gillard appealed to the Illinois Appellate Court challenging both the prejudicial nature of Officer Heenan's testimony and the state's failure to disclose the results of the Lewis test before trial. The court rejected the claims and affirmed the conviction.
 
 
 10
 Gillard's attorney decided not to petition the Illinois Supreme Court. The public defender's office, where the attorney worked, permitted its attorneys to make such decisions as long as they notified the client and advised him of his right to file a pro se petition. Gillard's attorney, however, neither contacted Gillard nor informed him of his rights. It was not until two years later, when Gillard inquired about the status of his case, that the attorney informed Gillard of the appellate court's disposition.
 
 
 11
 By this time, it was too late to seek leave to appeal to the Supreme Court, and Gillard, acting pro se, petitioned for state post-conviction relief. His petition was dismissed on the state's motion, and he did not appeal. Instead, he filed a petition for a writ of habeas corpus, 28 U.S.C. § 2254, in federal district court. In his habeas petition, Gillard again challenged Heenan's and Kokocinski's testimony. The district court never considered the merits of these claims, instead dismissing for procedural default. Gillard appeals, raising the same two issues.
 
 II. Analysis
 
 12
 Ordinarily, a state prisoner may not pursue habeas corpus relief under 28 U.S.C. § 2254 unless he has first presented his claims to the highest court in the state, which in Gillard's case is the Illinois Supreme Court. Nutall v. Greer, 764 F.2d 462, 465 (7th Cir.1985). Gillard acknowledges that he failed to appeal to the Supreme Court but alleges that we can review his claim under two exceptions to the rule of procedural default: (1) cause and prejudice and (2) manifest injustice. Murray v. Carrier, 477 U.S. 478, 485, 493 (1986).
 
 A. Cause and Prejudice
 
 13
 A prisoner may seek habeas corpus relief based on a constitutional claim not raised in the state's highest court if he shows good cause for failing to appeal and prejudice resulting from the violation. Id. As the district court properly noted, the "cause and prejudice standard ... is conjunctive. That is, a petitioner's inability to demonstrate either prong results in dismissal of his habeas petition." (District Court Opinion at 7, citing Buelow v. Dickey, 847 F.2d 420, 425 (7th Cir.1988)). Following this rule, the district court dismissed Gillard's petition after considering only the cause prong.
 
 
 14
 Generally, cause exists only when "some objective factor external to the defense impeded counsel's efforts to comply with a state procedural rule." Murray, 477 U.S. at 488. Because an attorney, as the agent of the client, is not external to the defense, attorney inadvertence and ignorance rarely provides cause for a default. Coleman v. Thompson, 111 S.Ct. 2546, 2567 (1991). The exception to this rule is where the attorney's neglect violates a defendant's Sixth Amendment right to effective assistance of counsel. Id.
 
 
 15
 The right to effective assistance of counsel does not apply to all criminal proceedings. A defendant has a right to counsel, and hence effective assistance of counsel, for only one appeal. Douglas v. California, 372 U.S. 353 (1963). Thus, a defendant cannot claim ineffective assistance of counsel if his attorney acts negligently when appealing a decision from a state appellate court to a state supreme court. Coleman, 111 S.Ct. at 2568.
 
 
 16
 Under this standard, Gillard failed to prove cause. Gillard alleges that his attorney produced his default by refusing to petition the Illinois Supreme Court and by neglecting to advise Gillard of his right to proceed pro se. These actions, which occurred after the first appeal, do not raise a Sixth Amendment issue and hence cannot provide cause for Gillard's default.
 
 B. Manifestly Unfair Conviction
 
 17
 Gillard, however, also argues that he need not show cause because two errors in his trial caused "manifest injustice or fundamentally unfair incarceration." See Murray, 477 U.S. at 495. A constitutional error causes manifest injustice if it "has probably resulted in the conviction of one who is actually innocent." Id. at 496.
 
 
 18
 Gillard claims that two evidentiary errors caused manifest injustice. He first alleges that Officer Heenan's testimony "involving the woman's scream, the defendant's open belt, unzipped pants and exposed person had no probative value and only created an inference that defendant committed the charged crime of rape. The evidence concerning the ski pole served no other purpose than to depict Defendant as a violent person." (Appellant's Brief at 9). He also alleges that the court improperly admitted the results of the Lewis test, which the state withheld before trial.
 
 
 19
 Even if this testimony were improper, it did not cause the conviction of an innocent man. Gillard could have been convicted on the strength of the victim's testimony alone. The victim, who stood face-to-face with Gillard for several minutes while he assaulted her in a lighted stairway, identified Gillard as her assailant both at trial and in a line up.
 
 III.
 
 20
 Because Gillard can show neither cause nor manifest injustice, the district court's dismissal for procedural default is AFFIRMED.
 
 
 
 [1]
 Both parties agree to the accuracy of the summary